UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| BRENNAN NICHOLSON, | Case No. 1:12-CV-00470-EJL-CWD |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| RUBEN DELGADILLO, MIKE LARIMER AND DOES 1 – X, | |
| Defendants. | |

Pending before the Court in the above-entitled matter are a Motion for Summary Judgment by Defendant Mike Larimer ("Larimer") (Dkt. 25) and Larimer's related Motion to Strike (Dkt. 28).[1] The parties have submitted briefing on the motions and the matters are now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional

---

[1] Larimer moves to strike the Idaho State Police Incident Report (Dkt. 26-1) Nicholson filed with his Response to Larimer's Motion for Summary Judgment. Larimer contends the Police Incident Report contains hearsay and lacks proper foundation. The Police Incident Report supports Nicholson's contention that Larimer witnessed Delgadillo's sexual abuse of Nicholson. As noted, *infra*, the Court accepts Nicholson's claim that Larimer witnessed the abuse for purposes of summary judgment. Thus, the Police Incident Report is immaterial to this Court's analysis of Larimer's Motion for Summary Judgment. Larimer's Motion to Strike (Dkt. 28) is accordingly denied as moot.

process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument.

For the reasons stated below, the Court enters the following Order granting Defendant Larimer's Motion for Summary Judgment and denying Defendant Larimer's Motion to Strike.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Response to Larimer's Motion for Summary Judgment. At the time of the events leading to this suit, Plaintiff Brennan Nicholson ("Nicholson") was a fifteen year old student at Vallivue High School. Nicholson's stepfather was dying of cancer and Nicholson was acting out at school. In April 2008, Nicholson was required to attend an expulsion hearing.

At the time, Defendant Ruben Delgadillo ("Delgadillo") was a School Resource Officer ("SRO") with the Caldwell Police Department. Due to his role as SRO, Delgadillo was a member of the expulsion board that heard Nicholson's case. After the expulsion hearing, Delgadillo approached Nicholson and his mother and offered to mentor Nicholson and train him for football. Nicholson ultimately accepted Delgadillo's offer.

Over the spring and summer of 2008, Delgadillo took Nicholson to local schools to perform running exercises. Afterwards, Delgadillo would take

Nicholson back to his Delgadillo's residence in order to "measure" Nicholson's muscles and rub ointment on his legs. At Delgadillo's invitation, Nicholson began visiting Delgadillo's residence regularly and eventually started spending the night there as well. Nicholson slept in Delgadillo's bed, with Delgadillo, during these overnights. The first time Nicholson spent the night, Delgadillo gave him a blue pill that made Nicholson's vision blurry. Nicholson awoke that night to Delgadillo sexually molesting him, including performing anal intercourse. Nicholson pretended to be asleep while Delgadillo accosted him. Delgadillo continued to inappropriately touch and sexually molest Nicholson throughout the spring and summer of 2008.

In the meantime, in mid-April 2008, Larimer, a Caldwell police officer and friend and co-worker of Delgadillo, separated from his wife and needed a place to stay. The parties dispute whether Larimer acted as Delgadillo's supervisor during the events at issue in this suit. However, Larimer resided with Delgadillo from approximately mid-April 2008 to June 1, 2008. During this time, Larimer used Delgadillo's address as his own mailing address and spent approximately half of his nights at Delgadillo's home.[2] (Dkt. 25-2, ¶7.) Larimer was never present at Delgadillo's residence in order to perform his official duties as a Caldwell police

---

[2] Larimer started a new relationship during this time and states he spent the other half of his nights at his new girlfriend's residence. (*Id.*)

officer and was never dispatched in connection with the police department to Delgadillo's residence. (*Id*., ¶8.)

During the time Larimer stayed at Delgadillo's home, Larimer recalls seeing Nicholson there on one or two occasions. (*Id*., ¶9.) Larimer denies ever observing Delgadillo touching Nicholson inappropriately and claims he never knew anything improper was going on between Delgadillo and Nicholson. (*Id*., ¶¶10-11.) Larimer suggests he would have immediately reported inappropriate conduct to the appropriate law enforcement authorities if he had ever observed it. (*Id*.)

However, Nicholson claims Larimer walked in the front door of Delgadillo's residence on one occasion when Delgadillo and Nicholson were in plain sight in the living room. On this occasion, Delgadillo was rubbing ointment on Nicholson's legs and fondling Nicholson's penis. Nicholson states Larimer unquestionably witnessed this inappropriate touching and did nothing to intercede, even though Larimer was aware Nicholson was a minor. Nicholson claims Larimer merely avoided making eye contact with Nicholson when he encountered him at Delgadillo's residence after this event. The Court will accept Nicholson's version of the facts for the purposes of this motion.

Nicholson ultimately reported Delgadillo and, on March 19, 2009, after an investigation by Idaho State Police, a grand jury indicted Delgadillo with the crimes of lewd conduct with a minor under sixteen, I.C. § 18-1508, and sexual

battery of a minor, I.C. § 18-1508A. (Dkt. 26, p. 4.) Delgadillo ultimately pled guilty to felony injury of a child, I.C. § 18-1501(1), and was sentenced to a total of ten years, with the first three years fixed. (*Id*.) On April 6, 2011, Delgadillo was placed on probation for a period of ten years. (*Id*.)

Nicholson thereafter brought the instant suit against Delgadillo, Larimer and Does I-X under 42 U.S.C. §1983. (Dkt 1.) Delgadillo failed to appear, and default was entered against him on September 27, 2013. (Dkt. 24.) In his Complaint, Nicholson alleges Larimer was aware, or should have been aware, that Nicholson was in danger from and was being molested by Delgadillo, and that Larimer did nothing to intervene or report Delgadillo's actions, despite Larimer's role as Delgadillo's supervisor. (Dkt. 1, ¶¶ 28-34.)

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. *S.E.C. v. Seaboard Corp.*, 677 F. 2d 1289, 1293 (9th Cir. 1982). An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co., Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

MEMORANDUM DECISION AND ORDER - 6

*Id*. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir.1992).

## ANALYSIS

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id*. (citation omitted).

To establish a prima facie case under 42 U.S.C. § 1983, Plaintiffs "must adduce proof of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right." *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th Cir.1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The parties in this case do not address whether the action at issue resulted in a deprivation of a constitutional right or a federal statutory right. Instead, the focus of the parties' briefing is on the first element— whether the action occurred under color of law.

Whether an individual who inflicted injuries acted under color of state law is often a threshold question, as individuals "have a right to be free from state violations of the constitutional guarantees to be secure in one's person and home, not to be deprived of life, liberty, or property without due process, and to be free from cruel and unusual punishment." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 836 (9th Cir. 1996) ("*Van Ort*"). However, the State is generally not constitutionally required to protect the life, liberty and property of its citizens against invasion by private actors.[3] *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 196 (1989) (the Fourteenth Amendment's "purpose was to

---

[3] Only under "highly limited circumstances does the government have a duty to protect individuals from deprivations of constitutional rights by private individuals." *Id*. Usually, affirmative acts by the government, such as incarceration of criminals or institutionalization of the mentally ill, are required to create such circumstances. *Id*. (citing *DeShaney*, 489 U.S. at 198-200).

MEMORANDUM DECISION AND ORDER - 8

protect the people from the State, not to ensure that the State protected them from each other"). If a government officer does not act within his scope of employment or under color of state law, then that government officer acts as a private citizen. *Van Ort*, 92 F.3d at 835 (citing *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) ("acts of state officials in the ambit of their personal pursuits are not state action"); *see also Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (off-duty police officer acted "as a private citizen, not as a state actor" when he did not act in accordance with police regulation or invoke the authority of the police department.) Thus, if, in failing to intervene, Larimer acted as a private citizen, and not as a police officer, then Nicholson did not have a constitutional right to be free from Larimer's alleged deprivation of his constitutional rights. *Van Ort*, 92 F.3d at 836.

A person acts under color of state law if he exercises power possessed by virtue of state law and made possible only because he is clothed with the authority of state law. *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991). The parties do not here dispute that Delgadillo unconstitutionally abused his authority as a police officer and SRO to facilitate

Nicholson's sexual exploitation. Whether Larimer acted under color of state law is instead at issue.

Larimer contends he was never present at Delgadillo's house on official police business, that he was never dispatched to Delgadillo's home, that he was off-duty at all times relevant to this dispute, and that he resided at Delgadillo's home solely in his personal capacity as a friend needing a place to stay after separating from his wife. (Dkt. 25-1, pp. 5-6.) As such, Larimer suggests he could not have been acting under color of state law when he allegedly witnessed Delgadillo's abuse of Nicholson and failed to intervene. (*Id.*) In support of this argument, Larimer cites several cases holding off-duty police officers do not act under color of state law merely because they are law enforcement officers. Instead, only if the officer's actions were in some way related to performance of official duties as a law enforcement official could their acts be said to be under color of state law. (Dkt. 25-1, pp. 7-10) (citing *Van Ort*, 92 F.3d 831 (9th Cir. 1996) (off-duty detective did not act under color of state law when he forcibly entered plaintiffs' home and robbed and tortured them because he did not act under the pretense of law or in connection with his official duties in committing such acts); *Hechavarria v. City and Cnty. of San Francisco*, 2011 WL 6425178 (9th Cir. 2011) (off-duty parking control officer did not act under color of state law when he assaulted plaintiff over alleged extramarital affair where officer wore street clothes,

MEMORANDUM DECISION AND ORDER - 10

drove his own personal vehicle, did not represent himself as a city employee, and did not use any city resources to initiate or carry out assault); *Dilts v. Blair*, 2005 WL 2847415 (D. Idaho 2005) (police officer did not act under color of state law when he assaulted plaintiff, his girlfriend, at their shared residence during work hours, dressed in his uniform, where officer went off-duty during the time of assault to check on his children, and the abuse was a result of a domestic dispute unrelated to the officer's official duties)).

Nicholson counters that a police officer is liable under 42 U.S.C. § 1983 for the failure to act when he has a reasonable opportunity to intervene in the violation of a constitutional right by another police officer. (Dkt. 26, p. 1) (citing *United States v. Koon*, 34 F.3d 1416, 1446, n. 25 (9th Cir. 1994)("*Koon*"), *rev'd on other grounds*, 518 U.S. 81 (1996)). Law enforcement officials are liable for failure to intercede in the violation of constitutional rights by another police officer if they had a "realistic opportunity" to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000). Nicholson suggests the "color of law" argument raised by Larimer is inapplicable because "the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." (*Id.*, p. 5) (quoting *Koon*, 34 F.3d at 447). Nicholson thus argues that because Delgadillo acted under color of state law when he perpetrated the abuse against Nicholson, Larimer is liable for failure to intervene under *Koon*.

Each of the cases cited by Nicholson in support of his failure to intervene argument, including *Koon*, involved the conduct of officials acting in their official capacity. That is, in every case where the facts supported holding an official liable for failure to intervene, the official who failed to intervene was acting in the course of his or her employment at the time they failed to intercede in the deprivation of constitutional rights. In *Koon*, the Ninth Circuit affirmed the conviction of Los Angeles Police Department ("LAPD") Sergeant Stacey Koon for depriving Rodney King of his constitutional rights by willfully allowing other officers to assault King. However, the assault of King occurred while he was in police custody, after King was arrested for driving while intoxicated. None of the officers involved in the assault of King were off-duty, and each was acting in connection with his employment with the LAPD at the time of the abuse.

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) involved suits initiated by several alleged victims of excessive force by the LAPD. In three separate law suits, various individuals sued the city of Los Angeles and numerous city officials, alleging the defendants either used excessive force, acquiesced in the use of excessive force, or engaged in an unconstitutional policy of indemnifying LAPD officers against punitive damages in excessive force cases. *Id*., at 1277-78. With respect to the failure to intercede claim, the Ninth Circuit held police officers who were not present at the time excessive force was utilized could not intercede

to prevent their fellow officers from shooting the victims, and thus could not be held liable for failure to intervene. *Id*., at 1290. However, all of the officers involved, including those who used excessive force and those who allegedly failed to intervene, were on-duty and were acting in the course of their employment as police officers at the time the victims were shot. Neither *Koon* nor *Cunningham* considered whether an off-duty officer can be held liable under § 1983 for failure to intervene.

Each of the other cases cited by Nicholson in support of his failure to intervene argument also involved officials acting within the scope of their employment at the time they failed to intercede. *See*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (material issue of fact as to whether two correctional officers had opportunity to intervene to prevent third officer from firing bird shot at prison inmate precluded summary judgment); *Ruiz v. Sawaya*, 2013 WL 5665404 (N.D. Cal. 2013) (denying summary judgment in § 1983 case where prison guard used excessive force against inmate and evidence suggested other guards had a reasonable opportunity to intervene but failed to do so); *McKay v. City of Hayward*, 949 F.Supp.2d 971, 982 (N.D. Cal. 2013) (denying summary judgment where police officers involved in arrest of suspect had a realistic opportunity to stop excessive force against suspect by another officer but failed to intervene); *Motley v. Parks*, 383 F.3d 1058, 1071 (9th Cir. 2004) (denying summary judgment

in § 1983 claim against officers who failed to intercede in harassment during a search); *Caylor v. City of Seattle*, 2013 WL 1855739 (W.D. Wash. 2013) (police officer who failed to intercede in excessive force used during response to suicide call was not entitled to summary judgment); *Anderson v. Hartley*, 2011 WL 5876913 (E.D. Cal. 2011) (denying motion to dismiss because evidence suggested official had opportunity to intercede but failed to do so when fellow officer beat prison inmate); *Lu Hang v. County of Alameda*, 2011 WL 5024641 (N.D. Cal. 2011) (denying motion to dismiss where California Highway Patrol officers witnessed but failed to stop plaintiff's unconstitutional interrogation, arrest and subsequent detention); *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002) (factual issues precluded summary judgment on Eighth Amendment claim against corrections officer who allegedly failed to intervene to stop other officers' use of excessive force against inmate); *Byrd v. Brishke*, 466 F.2d 6, 10-11 (7th Cir. 1972) (evidence generated jury question as to liability of two police officers and police sergeant who allegedly stood by without interfering while suspect was beaten by unknown officers during arrest).[4]

---

[4] Nicholson argues that because Delgadillo was acting under color of law when Larimer allegedly witnessed the abuse but failed to intervene, Larimer is also liable under § 1983 even though both Larimer and Delgadillo were off-duty and on private property at the time of the abuse. (Dkt. 26, p. 10) (citing *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). *Griffin* considered whether a city manager could be liable under § 1983 for raping a city employee at her home after work hours. The Eleventh Circuit determined the defendant utilized his authority as city manager to facilitate the assault on

MEMORANDUM DECISION AND ORDER - 14

The Court has been unable to locate, and Nicholson fails to cite, any case finding an official liable for failure to intervene under § 1983 where such official was not acting within the scope of employment at the time intervention could have stopped a constitutional violation. As reprehensible as Larimer's failure to intervene to stop Delgadillo's actions was, assuming Larimer witnessed Delgadillo's abuse of Nicholson, the undisputed facts establish that Larimer was acting as a private citizen, and did not act within the scope of his employment as a Caldwell police officer, at all times relevant to this dispute. There is simply no authority to support Nicholson's position that Larimer, as a private citizen, can be held liable under § 1983 for failure to intervene, even if Delgadillo acted under color of state law when he abused Nicholson. As this Court has previously held, "a police officer is not acting under color of law 24 hours a day, 7 days a week, on or off duty, in or out of uniform. If a police officer is acting as a private citizen, any alleged harm from the police officer's actions is not recoverable under § 1983 as the officer was not acting under color of law." *Dilts v. Blair*, 2005 WL 2847415, at *3 (D. Idaho 2005); *see also U.S. v. Abney*, 2003 WL 22047842, at *4 (S.D.N.Y. 2003) ("The proposition that an off-duty police officer is required as a matter of

---

the victim and that he was therefore acting under color of law at the time of the assault. *Id.*, at 1305. However, Griffin did not involve a failure to intervene claim and did not consider liability under § 1983 of a third party for failure to intercede. While the analysis in *Griffin* is relevant to whether Delgadillo acted under color of law, it is inapplicable to whether Larimer also acted under color of law.

MEMORANDUM DECISION AND ORDER - 15

law to act as a police officer every time there is an event that touches on a crime would be inconsistent with the careful analysis in the cases which have attempted to determine whether off-duty police officers were in fact operating under 'color of law,' such that their actions could be considered to be official state actions."); *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994) ("a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law" within the meaning of § 1983).

      The evidence is unrebutted that Larimer acted as a private individual at all times relevant to this dispute. Whenever he interacted with Nicholson, including when he allegedly witnessed Delgadillo molesting Nicholson, Larimer was off-duty and was not in uniform. He never displayed his badge nor identified himself in any way as a police officer. He did not indicate that he was acting on any official police business, and was never, in fact, present at Delgadillo's residence as a result of any police business. At all times Larimer was present at Delgadillo's home, he was there as a private citizen, and did not act in connection with his employment with the Caldwell Police Department.[5] Under these facts, Larimer never purported to act in any official capacity and, thus, was not acting under color

---

[5] That Nicholson knew Larimer was a police officer does not affect this conclusion. *Van Ort*, 92 F.3d at 839 ("Merely because a police officer is recognized as an individual employed as a police officer does not alone transform private acts into acts under color of state law.").

of state law under § 1983. Nicholson's § 1983 claim against Larimer accordingly must fail.[6]

## ORDER

This case is before the Court on Defendant Larimer's Motion for Summary Judgment and Defendant Larimer's Motion to Strike. Having carefully considered the filings of all the parties and entire record in this case, and for the reasons stated herein, it hereby:

ORDERED that Defendant Larimer's Motion for Summary Judgment (Dkt. 25) is **GRANTED**; and

Defendant Larimer's Motion to Strike (Dkt. 28) is **DENIED**.

Nicholson has not moved to identify or serve the Complaint on the John Doe Defendants. The Court accordingly presumes Nicholson is not moving forward on such claims, and therefore dismisses his claims against Defendant Does I-X. However, Nicholson has obtained an Order of Default against Defendant Delgadillo. As the amount of Nicholson's damages is not a sum certain, the Court would, pursuant to Federal Rule of Civil Procedure 55(b)(2),entertain a motion by Nicholson for entry of default judgment against Defendant Delgadillo.

---

[6] Although Nicholson's complaint alleges Larimer was responsible for supervising Delgadillo and failed to intervene, he has not presented any facts to establish Larimer had supervisory authority over Delgadillo. (Dkt. 1, ¶ 42.) Moreover, even if Larimer had a duty to supervise Delgadillo this duty did not, under the cases discussed herein, create a duty to supervise Delgadillo at all times, including when Larimer was off-duty and was not acting within the scope of his employment.

SO ORDERED.

DATED: April 22, 2014

Edward J. Lodge
United States District Judge