UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRENNAN NICHOLSON,<br><br>    Plaintiff,<br><br>v.<br><br>RUBEN DELGADILLO, MIKE LARIMER AND DOES 1 – X,<br><br>    Defendants. | Case No. 1:12-CV-00470-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court in the above-entitled matter is Plaintiff Brennan Nicholson's ("Nicholson") Motion for Default Judgment as to Defendant Ruben Delgadillo ("Delgadillo"). (Dkt. 36.) Nicholson brought a civil rights claim under 42 U.S.C. § 1983 against Delgadillo in September, 2012.[1] Delgadillo failed to appear, and an order of default was entered against him on September 27, 2013. (Dkt. 24.) As an order of default has been entered against Delgadillo, liability has been admitted. The only remaining issue is the amount of the damage award. Nicholson filed a memorandum requesting $225,000 in compensatory damages and $1.25 million in punitive damages on October 30, 2014. (Dkt. 43.) The Court held a hearing on Nicholson's damages request on November 5, 2014. For the

---

[1] This Court dismissed co-defendant Mike Larimer on summary judgment. (Dkt. 31.)

MEMORANDUM DECISION AND ORDER - 1

reasons set forth below, Nicholson is awarded $225,000 in compensatory damages and $675,000 in punitive damages, for total damages of $900,000.

I.  Facts

During the events leading to this suit, Nicholson was a fifteen year old student at Vallivue High School. Nicholson's stepfather was dying of cancer and Nicholson was acting out at school. In April 2008, Nicholson was required to attend an expulsion hearing.

At the time, Delgadillo was a School Resource Officer ("SRO") with the Caldwell Police Department. Due to his role as SRO, Delgadillo was a member of the expulsion board that heard Nicholson's case. After the expulsion hearing, while on school property and while in his Caldwell Police uniform, Delgadillo approached Nicholson and his mother and offered to mentor Nicholson and train him for football. Nicholson's mother trusted Delgadillo because he was a police officer and an SRO assigned to work with children. She ultimately agreed to the mentorship.

Delgadillo began to deliberately befriend and establish an emotional connection with Nicholson in order to lower his inhibitions. On a daily basis, Delgadillo would pick Nicholson up at his home and take him jogging. Delgadillo would also take Nicholson on ride-alongs in Delgadillo's police vehicle. Delgadillo then began having Nicholson spend the night with him at Delgadillo's

home. On dozens of occasions over the following months, Delgadillo sexually molested and raped Nicholson. Nicholson felt he had no one to turn to because he feared the Caldwell Police would not protect him. However, in November 2008, Nicholson ultimately went to the Idaho State Police to report the abuse.

On October 25, 2010, after an investigation by the Idaho State Police, Delgadillo pled guilty to felony injury of a child in violation of I.C. § 18-1508, and was sentenced to a total of ten years, with the first three years fixed. On April 6, 2011, Delgadillo was placed on probation for a period of ten years. Delgadillo is now free on probation, while Nicholson has suffered and continues to suffer significant mental and emotional damage as a result of Delgadillo's abuse.

Nicholson seeks compensatory and punitive damages under 42 U.S.C. § 1983. Nicholson has been diagnosed with Post Traumatic Stress Disorder ("PTSD"), anxiety, depression, and reports difficulty focusing, nervousness, feelings of unease, and avoidance of intimate partner relationships as a result of the abuse. He also reports lack of motivation/enthusiasm/drive, not engaging in activities he previously enjoyed, inability to form meaningful personal relationships, impact on ability to continue with education or obtain meaningful work, negative self-image, and general sadness arising from Delgadillo's victimization.

## II. Hearing

Nicholson was not present for the November 5, 2014 hearing on default damages. His counsel represented that Nicholson suffers trauma whenever he is forced to remember Delgadillo's abuse, and that Nicholson consequently avoids any situation which may trigger memories of the abuse. Nicholson felt unable to attend the hearing due to fear of such trauma, and has not sought counseling as a result of such fear. Nicholson's counsel noted that prosecution of this case has been difficult due to Nicholson's avoidance issues, but submitted the declaration of Tylene Channer ("Channer"), a licensed clinical social worker, in support of Nicholson's damages request. (Dkt. 39-1.) Channer specializes in interviewing and analyzing victims of childhood sexual abuse, and met with Nicholson on August 29, 2014 to conduct an assessment of the impact of trauma symptoms Nicholson suffers as a result of his victimization by Delgadillo. (*Id.*)

In addition to a standard intake assessment, Channer performed several analyses and tests on Nicholson. The DSM-5 Self Rated Level 1 Cross-Cutting Symptom Measure test showed a moderate level of depression, severe level of anxiety, and a severe level of personality functioning.[2] Nicholson's DES-B (Brief Dissociative Experience Scale) score placed him in the severe level of dissociation.

---

[2] Channer describes a severe level of personality functioning as not knowing who one is or what one wants out of life and not feeling close to others.

In addition, on the WHODAS 2.0 (World Health Organization Disability Assessment Schedule), Nicholson scored in the severe range of difficulty in establishing relationships with people, including making new friends or having close friends. Nicholson also displayed a mild form of depression on the PROMIS Emotional Distress-Depression-Short Form. Finally, Nicholson scored a moderately severe level of PTSD on the NSESSS (National Stressful Events Survey PTSD Short Scale).

Channer also noted that Nicholson reported the following PTSD symptoms: flashbacks, nightmares about the abuse, loss of interest in activities, hypervigilance, and anger. Nicholson demonstrated continuing anxiety symptoms resulting from the abuse including difficulty focusing, nervousness, feeling of unease, and avoidance of intimate partner relationships. Nicholson also reported depression symptoms resulting from the abuse including lack of motivation/enthusiasm/drive, not engaging in activities he previously enjoyed, inability to perform meaningful personal relationships, impact on ability to continue with education or obtain meaningful work, negative self-image, and general sadness.

### III. Analysis

Upon entry of default, the complaint's factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven.

MEMORANDUM DECISION AND ORDER - 5

*See* Fed. R. Civ. P 55(b)(2); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977). Where, as here, a plaintiff's damages are either punitive or are not capable of ascertainment from definite figures contained in documentary evidence or detailed in affidavits, they require "proving up" through an evidentiary hearing or some other means. *Dolphin v. Ruiz*, 2008 WL 4552940, at *3 (C.D. Cal. 2008) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323-24 (7th Cir. 1983)). A plaintiff's burden "in 'proving up' damages is relatively lenient." *Elektra Entm't Grp., Inc. v. Bryant*, 2004 WL 783123, at *2 (C.D.Cal.2004) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp.*, 973 F.2d 155, 159 (2d Cir.1992)). Injury is admitted upon default, but the plaintiff "still must prove that the compensation sought relates to the damages that naturally flow from the injuries pled." *Wu v. Ip*, 1996 WL 428342, at *1 (N.D.Cal.1996) (citing *Greyhound*, 973 F.2d at 159). The decision to enter default is within the discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

  A. *Compensatory Damages*

  Damages under § 1983 may be both punitive and compensatory. *Dolphin v. Ruiz*, 2008 WL 4552940, at *3 (C.D. Cal. 2008). There are two categories of compensatory damages in this case: those for the physical injury to Nicholson from anal sodomy and those from the emotional distress resulting from the sexual abuse.

*See Mathie v. Fries*, 121 F.3d 808, 812 (2d Cir. 1997); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (compensatory damages are recoverable in § 1983 cases for injuries including "personal humiliation, and mental anguish and suffering."); *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000) ("In addition to monetary loss or physical pain and suffering, under the law a § 1983 plaintiff also may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation.").

As mentioned, Nicholson did not appear during the default damages hearing, but offered the Channer declaration to establish the severe emotional distress and continuing anxiety, depression and PTSD symptoms he suffers as a result of Delgadillo's abuse.[3] Nicholson's counsel also submitted a collection of cases awarding compensatory and/or punitive damages in § 1983 cases involving sexual abuse. Such cases illustrate that damages for pain and suffering and emotional distress, though difficult to quantify, may be substantial where, as here, an individual is deprived of their constitutional right to be free from the invasion of bodily integrity by one acting under the color of state law. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (explaining the "shocks the conscience" strand of substantive due process is concerned with preventing

---

[3] Nicholson introduced no evidence of any out of pocket expenses, medical or counseling bills, or other special damages.

government officials from "abusing their power, or employing it as an instrument of oppression.").

For instance, in *Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997), the Second Circuit affirmed an award of $250,000 in compensatory damages to a plaintiff who suffered from PTSD, anxiety, sleeplessness, insecurity and depression, as well as physical pain, humiliation and fear, as a result of his rape by a prison director while plaintiff was a pretrial detainee.[4] In so holding, the *Mathie* court explained the district judge "faced a difficult task in attempting to value the trauma suffered by [plaintiff] as a result of [defendant's] conduct, both because the extent of emotional injury does not readily translate into dollar amounts and because few truly comparable cases can be found." *Id.* at 814. In evaluating the district court's findings, the Second Circuit noted that determination of whether a damages award is reasonable should include consideration of amounts awarded in other comparable cases. *Id.* at 813.

The Court has reviewed the following comparable cases in its attempt to calculate a reasonable compensatory damages award:

- *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992)-Affirming total compensatory damages award of $200,000 to a woman falsely

---

[4] The *Mathie* court noted that plaintiff's compensatory award was lower than it would have been because part of plaintiff's emotional distress was caused by his participation in the murder that led to his arrest. *Id.* at 813.

MEMORANDUM DECISION AND ORDER - 8

arrested and raped by a police officer in a § 1983 case. As compensatory damages were awarded by a jury, the *Parrish* Court did not discuss the evidence supporting the award;

- *Parker v. Williams*, 855 F.2d 763, 775 (11th Cir. 1988), *withdrawn and superseded on other grounds*, 862 F.2d 1471 (11th Cir. 1989)-Affirming jury verdict of $100,000 in compensatory damages to a plaintiff in a § 1983 case who was kidnapped and raped by former jailer. The court noted plaintiff testified she suffered from PTSD, avoidance of public settings, nightmares, and difficulty sleeping as a result of rape;

- *Rogers v. City of Little Rock*, 152 F.3d 790 (8th Cir. 1998)-Affirming $100,000 award to plaintiff raped by a police officer after he stopped her for a traffic violation and then followed her home and entered her residence. The court noted plaintiff, her family, friends and an expert witness all testified to the harmful impact the incident had on plaintiff, and held the nature of the act and its context all contributed to the conclusion that the award was not arbitrary or excessive. Instead, the award was proportionate to the type of harm and the amount awarded in similar cases. *Id*. at 798 (citing *Mathie*, 121 F.3d at 813-14);

- *West v. Waymire*, 114 F.3d 646 (7th Cir. 1997)-Noting but not further discussing damages award of $600,000 entered against a police officer who molested a 13-year old girl on multiple occasions;

- *Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997)-Noting but not discussing $650,000 jury verdict awarded to a woman raped by an on-duty police officer;

- *Doe v. Mann*, 2007 WL 2028833 (M.D. Fla. 2007): Awarding $1.1 million dollars in compensatory damages (including $500,000 for past pain and suffering, $500,000 for future pain and suffering, $6,000 for past therapy and $100,000 for future therapy costs) after a default damages hearing to a 14-year old plaintiff raped by a police officer. Plaintiff testified that she continued to suffer humiliation, shame, guilt, pain, and fear as a result of defendant's sexual abuse, and that such feelings were exacerbated by every hearing or deposition she had to attend during the prosecution and sentencing phase of defendant's criminal trial. In addition to plaintiff's testimony, the court also based its damages award on the testimony of plaintiff's therapist, who diagnosed plaintiff with PTSD and with continued trust issues, anger issues and relationship issues;

- *Mitchell v. Bones*, 385 F.Supp.2d 62 (D. Me. 2005): Awarding $300,000 in compensatory damages after a default damages hearing to a minor forced to engage in sexual activity on three occasions by a police officer in a § 1983 case. This case is noteworthy because although, like Nicholson, the plaintiff in *Mitchell* did not present any evidence of hard costs, the court determined a high damages award was justified because defendant's "criminal actions against plaintiff, under the guise and authority of a law enforcement officer…represent a severe and inexcusable breach of trust and position and have had a substantially deleterious effect on [plaintiff]." *Id.* at 64;

- *G.G. v. Grindle*, 665 F.3d 795 (7th Cir. 2011): Upholding jury's compensatory damages award of $250,000 to 10- year old student victim of music teacher's sexual abuse in § 1983 case. In finding the award was not excessive, the Seventh Circuit considered plaintiff's testimony, as well as the testimony of plaintiff's counselor, that plaintiff suffered from PTSD, depression, anxiety, nightmares, avoidance of social situations , and mood swings as a result of the abuse;

- *Hall v. Terrell*, 648 F.Supp.2d 1229 (D. Colo. 2009)-Noting but not further discussing default judgment of $354,070 ($4,070 for medical

costs and $350,00 for emotional distress, mental anguish and suffering) in compensatory damages awarded against prison guard for brutally raping inmate in § 1983 case;

- *Etters v. Shanahan*, 2013 WL 787344 (E.D.N.C. 2013)-Awarding $100,000 in compensatory damages to inmate raped, assaulted and harassed by Department of Corrections official following entry of default judgment. Plaintiff testified that, as a result of the abuse, she suffered physical injury and severe psychological and emotional distress, "including depression, difficulty sleeping and eating, and bouts of crying." *Id*. at *1. The district court noted it based its compensatory award for plaintiff's emotional distress upon plaintiff's credible testimony and because an award of $100,000 was reasonable in light of awards in similar cases. *Id*. at *6;

- *Trinidad v. City of Boston*, 2011 WL 915338 (D. Mass. 2011)- Awarding $200,000 in compensatory damages to 19-year old prostitute forced to engage in oral sex on several occasions by police officer. Plaintiff testified she suffered severe physical and emotional trauma both during and after the incidents, and that she was diagnosed with PTSD and anxiety after the abuse. The *Trinidad* court collected comparable cases and noted "[c]ourts awarding compensatory

damages for—usually multi-incident—sexual assault and rape of inmates or detainees by prison guards and corrections officers have ranged from $100,000 to $500,000."[5] *Id.* at \*6;

- *Ortiz v. Lasker*, 2010 WL 3476017 (W.D.N.Y. 2010)-Plaintiff inmate raped by corrections officer awarded $250,000 in compensatory damages based on testimony of plaintiff and her husband, as well as medical records, suggesting plaintiff suffered from nightmares, PTSD, anxiety, difficulty with intimate relationships, and mood swings as a result of the rape.

---

[5] Citing *Daskalea v. District of Columbia*, 227 F.3d 433 (D.C.Cir.2000) (affirming a $350,000 jury award against the District of Columbia and its Department of Corrections for ongoing sexual abuse of a female inmate in light of a documented history of routine sexual abuse of women prisoners); *Mathie v. Fries*, 121 F.3d 808 (2d Cir.1997); Ortiz v. Lasker, 2010 WL 3476017 (W.D.N.Y. 2010); *Cash v. County of Erie*, 2009 WL 3199558 (W.D.N.Y. 2009) (entering default judgment of $500,000 compensatory against a detention center guard who assaulted and raped an inmate); *Hall v. Terrell*, 648 F.Supp.2d 1229 (D.Colo.2009); *Lewis v. Pugh*, 289 F. App'x 767 (5th Cir.2008) ( per curiam ) (affirming a jury verdict of $50,000 in compensatory damages against an officer who offered a woman a ride home and then took her to an abandoned trailer and raped her); *Hyde v. Nicholas*, 32 F. App'x 127 (5th Cir.2002) (affirming a default judgment of $50,000 in compensatory damages against an on-duty officer who sexually assaulted a woman); *Parrish v. Luckie*, 963 F.2d 201 (8th Cir.1992); *Campbell v. Graham*, 2010 WL 2901826 (E.D.Tenn. 2010) (awarding a default judgment of $25,000 in compensatory damages against an officer who responded to a domestic disturbance and raped the plaintiff); *Mize v. Tedford*, 2009 WL 1508375 (E.D.Mich. May 29, 2010) (awarding default judgment of $350,000 against on-duty officer who took a woman to a police building, placed his gun beside her, and raped her).

After consideration of the record in this case, including Channer's declaration, and upon reviewing the aforementioned cases, the Court finds an award of $225,000 is reasonable under the circumstances given the profound permanent damage done to the emotional well-being of a child at the hands of a law enforcement officer. This award is also consistent with and within the range of damages awarded by federal courts in comparable cases.

*B. Punitive Damages*

Punitive damages are available in a § 1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Supreme Court has identified three "guideposts" that bear on the reasonableness of punitive damages awards. *BMW v. Gore*, 517 U.S. 559, 574 (1996). These guideposts are: "(1) the degree of reprehensibility of the tortious conduct, (2) the ratio of punitive damages to compensatory damages, and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Id*.

In *State Farm. Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003), the Supreme Court reiterated that reprehensibility is the "most important indicum" of the reasonableness of a punitive damages award. (citing *Gore*, 517 U.S. at 575). The Supreme Court also offered a comprehensive analysis of factors to examine

when considering reprehensibility. Specifically, the Court held there are five factors to reprehensibility: (1) whether the harm caused is physical rather than economic; (2) whether the conduct causing harm shows "indifference to or a reckless disregard of the health or safety of others"; (3) whether the "target of the conduct" is vulnerable; (4) whether the defendant's conduct involves repeated actions or an isolated incident; and (5) whether the harm is a result of "intentional malice, trickery, or deceit, or mere accident." *Id*. The Supreme Court further noted sanctions of double, treble or quadruple damages have a long legislative history and are generally sufficient to deter and punish. *Id*. at 425 (citing *Gore*, 517 U.S. at 581).

In consideration of the factors identified in *State Farm*, the unrefuted facts of this case show that a substantial punitive damages award is appropriate. First, the damage was physical, not just economical. Nicholson suffered both physical harm as a result of Delgadillo's sodomy, as well as severe and continuing emotional harm. Second, Delgadillo's conduct showed a complete disregard for Nicholson's well-being. Third, Nicholson, a minor, was particularly vulnerable to Delgadillo's predatory acts. *See Dang v. Cross*, 422 F.3d 800, 810 (9th Cir.2005) (the trier of fact should consider "the relative positions of power or authority between the parties and determine whether the defendant misused his power or authority or abused the plaintiff's weakness in the course of the wrongful conduct"). Fourth,

the sexual abuse was not an isolated incident but instead involved multiple acts perpetrated over several months. Fifth, the sexual abuse and sodomy perpetrated by the defendant was applied maliciously and sadistically in order to afford personal gratification to the defendant while completely disregarding the permanent psychological damage he was causing his victim, a child.

The conduct at issue here involved the grooming, betrayal, and rape of a child. Delgadillo's use of his position as a School Resource Officer and police officer to gain access to and victimize an underage student was an outrageous abuse of power and authority. In consideration of all the *State Farm* factors, an award of punitive damages in the range of three times the compensatory damages is appropriate. Nicholson is accordingly awarded $675,000 in punitive damages.

## IV. Conclusion

Nicholson's request for default judgment (Dkt. 36) is **GRANTED**. Judgment shall be entered in favor of Nicholson and against Delgadillo in the amount of $225,000 in compensatory damages and $675,000 in punitive damages, for a total damages award of $900,000.

SO ORDERED this 5th day of December, 2014.

_____
Edward J. Lodge
United States District Judge